UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

SHIR FRENKEL, individually and
as wife and survivor of her deceased's
husband, IGAL TYSZMAN's estate,
and EVAN KRACKOWER, as pending Personal
Representative of the ESTATE OF IGAL
TYSZMAN for the benefit of the ESTATE OF
IGAL TYSZMAN and for the benefit of deceased's
survivor, SHIR FRENKEL, his wife,

        Plaintiffs,

V.

ROYAL CARIBBEAN CRUISES LTD.

Defendant.

_____/

## COMPLAINT AND JURY DEMAND

Plaintiffs, by and through undersigned counsel, hereby sues Defendant, ROYAL

CARIBBEAN CRUISES LTD. (hereinafter, "RCCL") and alleges:

## THE PARTIES AND JURISDICTION

1.     This is an action seeking damages in excess of $1,000,000.00 (One Million

Dollars) exclusive of interest, costs and attorney's fees.

2.     This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332

as this is a civil action in which the matter in controversy exceeds the sum or value of $75,000,

exclusive of interest and costs, and is between citizens of different States and/or citizens of a

State and citizens or subjects of a foreign state.

3.     This Court also has Admiralty subject matter jurisdiction pursuant to 28 U.S.C. §

1333 as this case involves a maritime tort. The type of incident and injuries suffered by Plaintiffs

had the potential to impact maritime commerce as shore side excursions are a part of the cruise experience and sold by cruise lines aboard their cruise ships. This action is being filed in this Court pursuant to the terms and conditions in the Passenger Contract Ticket issued by Defendant RCCL.

4.    Plaintiff, Shir Frenkel is sui juris, and is a resident of Herzliya, Israel. Plaintiff was a passenger onboard the cruise ship ALLURE OF THE SEAS.

5.    Igal Tyszman, deceased husband of Shir Frenkel, was a passenger onboard the cruise ship ALLURE OF THE SEAS, and he died on or about July 5, 2018, the date of the subject accident described below.

6.    Evan Krakower is sui juris and is a practicing attorney here in South Florida, and is expected to be appointed as Personal Representative of the ESTATE OF IGAL TYSZMAN, as he is the proper party to bring this action on behalf of decedent's lawful survivor and on behalf of the ESTATE OF IGAL TYSZMAN, pursuant to Florida Statute Section 768.16 et, seq.

7.    RCCL is a Liberian company with its principal place of business and base of operations located in Miami, Florida.

8.    At all times material hereto, RCCL owned and operated the cruise ship ALLURE OF THE Seas.

a.    This Court has personal jurisdiction over RCCL as RCCL's principal place of business is located within Miami-Dade County, Florida;

b.    RCCL conducts substantial business within the State of Florida, including but not limited to operating cruises from Miami, Tampa, Cape Canaveral, Ft. Lauderdale, and Jacksonville;

c.      RCCL markets cruise vacations to Floridians, contracts with several Florida companies to provide provisions to its cruises ship while in Florida ports, and employs several thousand Floridians to work at its Miami headquarters; and/or;

d.      At all times material thereto, RCCL owned, operated, managed, maintained and/or controlled the vessel, the ALLURE OF THE SEAS.

## GENERAL ALLEGATIONS

9.      RCCL advertises and markets, through its web site, print material, onboard announcements and onboard television programing shore excursions for passengers to participate in as part of their cruise experience, including the Caribe Zip Line tour. RCCL obtains payment for the excursions online and onboard the cruise through the guests' SeaPass account.

10.      Cruise passengers cannot purchase shore excursions until they have a reservation number from RCCL and once they are confirmed for their trip with RCCL. While onboard the ship, cruise passengers have three ways to book excursions: 1) visit the shore excursion desk, 2) fill out the order form in the guest's stateroom, and 3) use the interactive TV system available on most ships.

11.      As the top reasons to book RCCL's shore excursions, RCCL states its guests are guaranteed priority departure in port, are provided flexible cancellation policies, and are guaranteed return to ship and the excursions are planned by "insured partners who adhere to the highest safety standards in the industry."

12.      Plaintiff Shir Frenkel and her deceased husband Igal Tyszman booked a one week cruise aboard the Allure of the Seas for their honeymoon and boarded said ship on July 1, 2018 at the port in Miami.



13.     On or about July 4, 2018, Plaintiffs approached the shore excursion desk on board to see what excursions the ship was offering to its guests. Plaintiffs were enticed by the Extreme Caribe Zip Line Tour that RCCL was offering at the port of Roatan, Honduras, and decided to book that excursion for the following day, July 5, 2018.  (See shore excursion tickets attached hereto as Exhibit A).

14.     Plaintiffs paid for that excursion with their Seapass cards on the ship. They booked the Extreme Caribe Zip Line Tour because they believed that it would be an exciting and safe excursion, being that it was advertised and promoted by RCCL. Plaintiffs believed the excursion was an RCCL excursion, since they only heard about it from RCCL, they paid RCCL for the excursion and the tickets for the excursion were stamped with the RCCL logo. Most importantly, RCCL brought Plaintiffs from the cruise ship to the excursion in Roatan, Honduras. Plaintiffs trusted that being a RCCL excursion, it would adhere to the highest safety standards in the industry and would be appropriately vetted initially and on an ongoing basis.

15.     On July 5, 2018, the ALLURE of the Seas called on Roatan, Honduras. It was raining outside, yet the excursion proceeded as scheduled.

16.     At the Caribe Zip Line location, Plaintiffs listened attentively to the safety briefing and followed all directions carefully.

17.     Plaintiff, Shir Frenkel went ahead of her deceased husband on the zipline. She had not yet reached the wooden platform when suddenly; Igal Tyszman came flying towards her, crashing head on into Shir Frenkel at a very high rate of speed.

18.     The force of the newly- weds' bodies crashing into one another while dangling from the zipline killed Igal Tyszman that same day, and his dead body was subsequently flown home to Israel.



19.     Plaintiff Shir Frenkel suffered numerous catastrophic injuries for which she was rushed to the closest  hospital by ambulance, where she was diagnosed with multiple rib fractures, a splenic fracture, left pleural effusion, left pulmonary contusion, multiple transverse fractures, renal lacerations and renal capsular hematoma. Shir Frenkel was eventually airlifted and flown to Broward Health Medical Center in Fort Lauderdale, FL where she was admitted to the trauma unit.



20.     At times material hereto, the Extreme Caribe Zip Line Tour was operated by agents, partners and/or joint ventures of RRCL. Any representations of RCCL to the contrary do

not control the legal status of the parties. Further, even if the excursion operator were an independent contractor, RCCL is not relieved of its duty to verify that its representations made in its literature and elsewhere about its excursion operators are true, that is, that the "insured partners adhere to the highest safety standards in the industry."

21.     RCCL chooses and negotiates contracts with various providers of excursions all over the world including in Honduras, the location of the zip-line in this case. RCCL then coordinates and contracts with the operators of the excursion to arrange for passengers to participate in the excursions and contracts the operators of the excursion to receive the proceeds of the excursion and to pay the operators of the excursion their percentage.

22.     To all outward appearances, RCCL was the operator of the excursion and, any representations contained in any of the fine print of its literature never expressly advised Plaintiff that it was not operating the excursion or advised Plaintiff of the identity of the excursion operator to allow Plaintiff to inquire about the operator's safety measures and standards.

23.     RCCL employs personnel at excursion desks to promote its excursions, to assist passengers in signing up for the excursions, and to organize the passengers on the days on which they go on the excursions.

24.     At all times material hereto, RCCL participated in the income and losses generated by the operation of the excursions including the Extreme Caribe Zip Line tour. RCCL receives a substantial amount of income from the sale of these excursions and in fact splits the excursion revenue with the owner of the excursion.

25.     All conditions precedent for filing and maintaining this action have been fulfilled, performed or waived.

## COUNT I
### (NEGLIGENCE AGAINST RCCL)

Plaintiff re-alleges all allegations in paragraphs 1 through 25 above as if alleged fully herein.

26.     RCCL and/or its agents, servants, joint ventures and/or employees owed Plaintiffs a duty to warn of dangers of which the RCCL knew or reasonably should have known. This duty extends beyond the port to places where the passenger is invited to or may reasonably be expected to visit. RCCL advertised, marketed and sold the Extreme Caribe Zip Line excursion to Plaintiffs and thus should have expected Plaintiffs to participate in said excursion. At all times material thereto, MC TOURS ROATAN, the operator of the excursion was the apparent agent of DEFENDANT, RCCL.

27.     At all times material thereto, RCCL made manifestations which caused Plaintiff to believe that MC Tours ROATAN had authority to act for the benefit of RCCL. These manifestations included:

a.     RCCL allowed its name to be utilized in connection with the advertising of subject zip line excursion;

b.     RCCL made all arrangements for the subject zip line excursion without effectively disclosing to Plaintiff that the subject zip line excursion was being run by another entity (and/or entities);

c.     RCCL marketed the subject zip line excursion using its company logo on its website and/or in its brochures and/or its ship without effectively disclosing to Plaintiff that said excursion was being run by another entity (and/or entities);

d.     RCCL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject zip line excursion

without effectively disclosing to Plaintiffs that said excursion was being run by another entity (and/or entities);

e.      Until the point that Plaintiffs actually participated in the subject zip line excursion, the Plaintiffs exclusive contact concerning the subject excursion was with RCCL;

f.      RCCL recommended to Plaintiffs to not engage in excursions, tours, activities that are not sold through RCCL as RCCL has no familiarity with other tours or their operations;

g.      RCCL assured Plaintiffs that its insured partners adhered to the highest safety standards in the industry;

h.      Plaintiffs received their receipts exclusively from RCCL for the purchase of the subject zip line excursion; and/or

i.      The fee for the excursion was charged to the Plaintiffs, and collected from the Plaintiffs, exclusively by RCCL.

28.      Plaintiffs reasonably relied on the above, to their detriment, so as to believe that the excursion personnel were the employee(s) and/or agent(s) of RCCL in choosing the subject zip line excursion.

29.      It was reasonable to believe that the operators of the excursion were RCCL's employee(s) and/or agent(s) because the Plaintiffs booked, paid for and made all necessary arrangements for the subject shore excursion with RCCL. RCCL's actions caused Plaintiffs to believe that the operator of the subject excursion had authority to act on RCCL's behalf. At no time did the operators of the excursion represent to the Plaintiffs in particular or any cruise ship's passengers that the zip line operators were not agents or employees of RCCL.

30.      Plaintiffs' reasonable reliance was detrimental because they would not have booked, paid for and/or participated in the subject zip line excursion and Plaintiff SHIR

FRANKEL would not have lost her husband on her honeymoon and simultaneously suffers catastrophic injuries, had the Plaintiffs known the subject excursion was not operated by RCCL.

31.     The Defendant RCCL had actual knowledge of the dangerous conditions aboard the subject zip line excursion since incredibly, it has been subject to at least one prior lawsuit, namely the CHIMENE V RCCL case that was filed in September 2015, as a result of catastrophic injuries that Plaintiff suffered while participating in the exact same zip line excursion! Plaintiff, Chimene injured both of her legs severely when she struck the platform at a high rate of speed.

a.          Prior to the 2015 lawsuit, Defendant RCCL was aware of ten other accidents involving the exact same excursion. These include the following complaints made to RCCL from its guests who participated in that zip line excursion:

b.      Karen Schnexmayder also struck her legs against the platform in May 2015 due to her inability to break, causing her to be propelled at a high rate of speed. She reported this incident to RCCL.

c.      Susan Stewart made a complaint to the legal department at RCCL in 2015 as a result of an injury to her arm while participating in the zipline excursion.

d.      Shannon Laza and her family participated in this excursion in January 2014. Ms. Laza described an incident where her daughters and her mother crashed into another group of people while that other group remained idle and stuck on the line as a result of zero communication between the platforms. This incident was reported to RCCL on their comment card.

e.      Gayla Blakely reported her accident to RCCL in September 2014 in her comment card. She stated that her and husband were unable to stop while on the subject zip line and they struck the platform at a high rate of speed.

f.      Kathy Rindhage was injured on the subject zip line in November 2014 as a result of her inability to break properly, causing her legs to dangle and hit the platform. The operator of the excursion informed RCCL of the accident.

g.      Laura Arends reported her accident to RCCL on the Guest Injury Statement. She indicated that there was a problem with the brake on the zip line and she struck her leg against the platform.

h.      Brenda Lee Marty Jimenez reported her incident to RCCL on their Guest Injury Statement on December 29, 2014. She stated that her daughter suffered injuries when the brake failed causing her to fly into the zip line stop. She believed the brake was faulty.

i.      Leigh Ann McClure reported her accident on June 11, 2015 on the Guest Injury Statement. She stated that the emergency brake was not pulled by her guide and she slammed into a tree at the end of the line. She further indicated that the receiving guide was preoccupied assisting other participants and was not ready to receive her.

j.      McMillin reported his accident to RCCL's Guest Services once he returned to the ship in 2015. He also reported it to Trip Advisor. He contended that while he approached the platform with his family, the guide was busy unharnessing guests in front of them, causing him and his family to strike this other group.

There is no question that Defendant RCCL had actual knowledge of the dangers associated with the operation of the subject zip line in light of the ten prior accidents that resulted in varying degrees of injuries to its passengers. It must be noted that these ten incidents are just

the ones that Plaintiffs were able to uncover—evidently there may be more that will be uncovered. These accidents occurred as a result of defects in the operation of said zip line, including faulty brake systems and lack of communication between the guides running the zip line operation. This is exactly why Plaintiff Igal Tyszman died on his honeymoon, and his wife Shir Frenkel suffered catastrophic injuries. Igal Tyszman was unable to stop before crashing into his wife, and the receiving guide had no idea that he was even coming because there was zero communication between the guides at each platform.

In addition, Defendant RCCL had constructive knowledge of the unreasonably dangerous condition of the zip line as it certainly existed for a sufficient length of time in light of the complaints dating back to January of 2014, three and a half years prior to the subject accident. Defendant RCCL should have known about the poor operation of the zip line by the exercise of reasonable care in visiting the excursion and inspecting it regularly to ensure that it is safe. At the very least, investigating the prior complaints made by numerous RCCL guests certainly would have put Defendant on notice that the subject zip line was not safe for Plaintiffs to visit on July 5, 2018.

RCCL breached its duty to ensure its guests, Plaintiffs, were reasonably safe while on their excursion by promoting and advertising said zip line excursion to them, and taking their money, when they knew or certainly should have known that the Caribe Zip Line Tour was anything but safe, and in fact, hazardous.

32.     As a direct and proximate result of the breach of the duty alleged above, IGAL TYSZMAN was pronounced dead on July 5, 2018, and the Plaintiff Shir Frenkel, deceased's wife has suffered and is suffering and will continue to suffer in the future the following damages:

       a.     Loss of support and services

      b.       Loss of companionship

      c.       Mental pain and suffering, and

      d.       Medical and Funeral expenses

As a direct and proximate result of the negligence of the Defendant, RCCL, and the resulting death of IGAL TYSZMAN, his estate has suffered and will continue the suffer the following damages;

      a.       Loss of prospective net accumulations and;

      b.       Medical and funeral bills and expenses charged to the Estate.

As a direct and proximate result of the negligence of the Defendant RCCL, Plaintiff SHIR FRENKEL suffered catastrophic injuries in about her body, and/or aggravated a preexisting condition, suffered pain there from, physical handicap, loss of earnings, incurred medical, nursing, attendant care, suffered emotional distress and her working ability has been impaired; said injuries are permanent and continuing in their nature and Plaintiff will suffer such losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment against RCCL for damages suffered as a result of the alleged accident and a trial by jury on all issues triable.

## COUNT II

### (NEGLIGENT SELECTION AND RETENTION OF ZIP LINE TOUR OPERATOR AGAINST RCCL)

Plaintiff re-alleges all allegations pled in paragraphs 1 through 32 above as if alleged fully herein.

33.     RCCL as the promoter of the subject excursion had the duty to exercise reasonable care to select a competent and careful tour operator to perform the excursion;

34.     RCCL breached its duty by:

a.      Failing to reasonably inquire into the credentials and qualifications of the subject zip line tour operator, namely MC Tours Roatan;

b.      Failing to periodically request the zip line operator to provide to RCCL safety inspection reports of the zip line;

c.      Selecting a zip line operator that failed to have a safe and proper braking system in place;

d.      Failing to institute safety inspection procedures to make sure that the dangerous conditions on the zip line were discovered and made safe;

e.      Selecting a zip line operator, who failed to have procedures in place to allow for communication between the guides at each platform;

f.      Selecting a zip line operator that did not have guides in place who operate the excursion in a reasonably safe manner, including but not limited to operating said zip line in heavy rain conditions.

35.     RCCL knew or reasonably should have known that the subject zip line operator was incompetent or unfit to conduct the subject excursion as at a minimum, there were ten prior accidents that occurred during the exact same excursion as a result of faulty brakes and/or lack of communication between the guides at each platform.  Each of these incidents were made known to this Defendant prior to the subject catastrophic accident.

36.     In addition, upon reasonable inspection of the subject excursion, Defendant would have learned directly about the defective equipment used during the zip line excursion, as well as the incompetent operation of said excursion due to their lack of communication. These defective conditions have been in existence for at least three and a half years prior to Plaintiffs' catastrophic, deadly accident.

37.     As a direct and proximate result of the negligence of Defendant in selecting and retaining said zip line operator, IGAL TYSZMAN was pronounced dead on July 5, 2018, and the Plaintiff Shir Frenkel, deceased's wife has suffered and is suffering and will continue to suffer in the future the following damages:

> a.     Loss of support and services

> b.     Loss of companionship

> c.     Mental pain and suffering, and

> d.     Medical and Funeral expenses.

As a direct and proximate result of the negligence of the Defendant, RCCL, and the resulting death of IGAL TYSZMAN, his estate has suffered and will continue the suffer the following damages;

> a.     Loss of prospective net accumulations and;

> b     Medical and funeral bills and expenses charged to the Estate.

As a direct and proximate result of the negligence of the Defendant RCCL, Plaintiff SHIR FRENKEL suffered catastrophic injuries in about her body, and/or aggravated a

preexisting condition, suffered pain there from, physical handicap, loss of earnings, incurred medical, nursing, attendant care, suffered emotional distress  and her working ability has been impaired; said injuries are permanent and continuing in their nature and Plaintiff will suffer such losses and impairments in the future.

**WHEREFOR**E, the Plaintiffs demand judgment against RCCL for damages suffered as a result of the alleged accident and a trial by jury on all issues triable.

**COUNT III**
**(JOINT VENTURE BETWEEN RCCL AND MC TOURS ROATAN)**

Plaintiff re-alleges all allegations in paragraphs 1 through 37 above as if alleged fully herein.

38.     At all times material thereto, RCCL and MC Tours ROATAN were engaged in a joint venture to provide excursions to passengers aboard RCCL's ship(s).

39.     At all times material thereto, RCCL and MC Tours entered into an agreement where RCCL would sell the subject zip line excursion to its passengers and MC Tours ROATAN would operate said excursion.

40.     As part of the joint venture, RCCL arranged for, sponsored, recommended, marketed, operated, sold and/or collected money for the subject zip line excursion and the money was then shared between RCCL and MC Tours. As its part of the joint venture, MC Tours provided labor and/or operated the subject zip line excursion.

41.     RCCL, on behalf of the joint venture, charged a fee to passengers who utilized the excursion(s). The fee was split between RCCL and MC Tours.

42.     At all times material thereto, RCCL and MC Tours had joint and/or shared control over aspect of the joint venture. MC Tours had control over the day-to-day working of the excursion(s). RCCL also had control over the day-to-day workings of the excursions in that they required MC Tours to exercise reasonable care in the operation of the subject zip line excursion. RCCL had control over the arrangements, marking, and sales of the excursion.

43.     At all times material thereto, RCCL and MC Tours shared a common purpose: to operate the subject zip line excursion for a profit.

44.     At all times material thereto, RCCL and MC Tours had a propriety and/or ownership interest in the subject zip line excursion. RCCL had an interest in arranging, sponsoring, recommending, advertising, operating, and selling the subject excursion as well as collecting money for such an excursion, and MC Tours had a propriety interest in the time and labor expended in operating the subject excursion.

45.     At all times material thereto, RCCL and MC Tours shared any losses sustained from the joint venture.

46.     RCCL and MC Tours are jointly and severally responsible for each other's negligence as partners of the partnership and/or joint venture.

47.     At all times material thereto, RCCL and MC Tours therefore:

a.      Hand an intention to create a joint venture;

b.      Had a joint propriety interest in the subject manner of the venture;

c.      Had mutual control and/or joint control over the subject matter of the venture with respect to the provision of excursions to passengers aboard the ship;

     d.     Had a right to share in the profits of the joint venture; and

     e.     Would share losses which may have been sustained.

48.     As a result of the foregoing negligence, which was the direct and proximate cause of IGAL TYSZMAN'S death, the Plaintiff Shir Frenkel, deceased's wife has suffered and is suffering and will continue to suffer in the future the following damages:

     a.     Loss of support and services

     b.     Loss of companionship

     c.     Mental pain and suffering, and

     d.     Medical and Funeral expenses.

As a direct and proximate result of the negligence of the Defendant, RCCL, and the resulting death of IGAL TYSZMAN, his estate has suffered and will continue the suffer the following damages;

     a.     Loss of prospective net accumulations and;

     b.     Medical and funeral bills and expenses charged to the Estate.

As a direct and proximate result of the negligence of the Defendant RCCL, Plaintiff SHIR FRENKEL suffered catastrophic injuries in about her body, and/or aggravated a preexisting condition, suffered pain there from, physical handicap, loss of earnings, incurred medical, nursing, attendant care, suffered emotional distress  and her working ability has been impaired; said injuries are permanent and continuing in their nature and Plaintiff will suffer such losses and impairments in the future.

WHEREFORE, the Plaintiffs demand judgment against RCCL for damages suffered as a result of the alleged accident and a trial by jury on all issues triable.

## COUNT IV
## (NEGLIGENT MISREPRESENTATION AGAINST RCCL)

Plaintiff re-alleges all allegations pied in paragraphs l through 48 above as if alleged fully herein.

49.     RCCL is in the business of providing vacation cruises aboard ships including the ALLURE of the Seas, owed to the general public, including its guests, Plaintiffs, to provide truthful and accurate information.

50.     RCCL through its agents, servants, and/or employees breached that duty by misrepresenting as a material fact that the operators of the shore excursions, which it refers to as partners, adhere to the highest safety standards in the industry, despite knowing that the subject zip line operator caused numerous prior accidents, some catastrophic, as a result of faulty equipment and incompetence.

51.     RCCL through its agents, servants and/or employees intentionally     made said misrepresentations of fact to Plaintiff knowing they were in fact false; and/or

52.     RCCL through its agents, servants and/or employees made said representations of fact to Plaintiffs with the intent that Plaintiffs would rely on said negligent misrepresentations of fact.

53.     Plaintiff justifiably relief on the aforesaid misrepresentations of fact by purchasing and participating in the Extreme Caribe Zip Line.

As a result of the foregoing negligence, which was the direct and proximate cause of IGAL TYSZMAN'S death, the Plaintiff Shir Frenkel, deceased's wife has suffered and is suffering and will continue to suffer in the future the following damages:

    a.      Loss of support and services

    b.      Loss of companionship

    c.      Mental pain and suffering, and

    d.      Medical and Funeral expenses.

As a direct and proximate result of the negligence of the Defendant, RCCL, and the resulting death of IGAL TYSZMAN, his estate has suffered and will continue the suffer the following damages;

    a.      Loss of prospective net accumulations and;

    b.      Medical and funeral bills and expenses charged to the Estate.

As a direct and proximate result of the negligence of the Defendant RCCL, Plaintiff SHIR FRENKEL suffered catastrophic injuries in about her body, and/or aggravated a preexisting condition, suffered pain there from, physical handicap, loss of earnings, incurred medical, nursing, attendant care, suffered emotional distress and her working ability has been impaired; said injuries are permanent and continuing in their nature and Plaintiff will suffer such losses and impairments in the future.

WHEREFORE, the Plaintiffs demand judgment against RCCL for damages suffered as a result of the alleged accident and a trial by jury on all issues triable.

## COUNT V
## (GROSS NEGLIGENCE)

Plaintiff re-alleges all allegations pied in paragraphs l through 53 above as if alleged fully herein.

54.     Defendant RCCL's conduct in advertising and promoting the Extreme Zip Line excursion to its guests aboard the Allure of the Seas, including Plaintiffs, and taking their money for said excursion, while knowing about the numerous prior accidents and injuries suffered by their guests at the hands of the zip line operator, amounted to gross negligence as defined by Fla. Stat. Sec. 768.72(2)(b). Specifically, Defendant RCCL engaged in conduct that was so reckless and wanting in care that it constituted a conscious disregard or indifference to the life, safety or rights of Plaintiffs, by choosing to profit on a zip line excursion, which they knew based on a minimum of ten prior accidents suffered by their passengers, was unreasonably dangerous. Defendant RCCL showed a grossly careless disregard for Plaintiffs safety by continuing to promote said excursion to Plaintiffs, and to profit off of them, despite the numerous prior accidents and injuries sustained by Defendant's guests on the exact same excursion.

As a result of said gross negligence as described above, which resulted in the death of IGAL TYSZMAN, Plaintiff SHIR FRENKEL suffered catastrophic injuries in about her body, and/or aggravated a preexisting condition, suffered pain there from, physical handicap, loss of earnings, incurred medical, nursing, attendant care, suffered emotional distress and her working ability has been impaired; said injuries are permanent and continuing in their nature and Plaintiff will suffer such losses and impairments in the future.

WHEREFORE, Plaintiffs demand judgment against RCCL including punitive damages suffered as a result of the alleged accident and a trial by jury on all issues triable.

## DEMAND FOR JURY TRIAL

The Plaintiffs hereby demand trial by jury of all issues so triable of right.

DATED this 30th day of November, 2018.

CHALIK AND CHALIK, P.A.
Attorneys for Plaintiff
10063 N. W. 1st Court
Plantation, Florida 33324
Tel.:   (954) 476-1000
Fax:    (954) 472-1173

By _____
    DEBI F. CHALIK
    Florida Bar No. 179566